JACOB SHAPIRO, ADMINISTRATOR, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED DECEMBER 9, 1916. No. 19122.

1. **Appeal:** CONFLICTING EVIDENCE. Where the evidence is conflicting, a verdict will not be set aside by a reviewing court unless it is manifestly wrong.

2. **Trial:** HARMLESS ERROR: INSTRUCTIONS. Ordinarily it is not reversible error to copy the pleadings in an instruction, if by other instructions the issues as to the particular acts of negligence relied upon are properly and concisely stated and submitted to the jury.

3. **Street Railways:** INJURY TO PEDESTRIAN: LIABILITY. Where a motorman in charge of a street car operated by electricity is suddenly confronted by an emergency which requires him to stop his car or lower the fender, if, in such emergency, his best judgment prompts him to stop the car, instead of attempting to lower the fender, and he uses suitable and the best approved means which are at his command for that purpose, neither he nor his employer are guilty of negligence, as a matter of law.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*John L. Webster* and *William R. King, contra.*

BARNES, J.

This action was brought by Jacob Shapiro, as administrator of the estate of his deceased minor son, Leon Shapiro, against the Omaha & Council Bluffs Street Railway Company for negligently causing the death of decedent, who was killed when attempting to cross the defendant's tracks in front of a moving car.

The allegations of negligence set forth in plaintiff's petition were, in substance, as follows: The death of Leon Shapiro was caused by the negligence and failure of the motorman in charge of defendant's street car to stop his

car before it reached the decedent, and, when said car struck the deceased, he was thrown on the fender of the car, and the motorman negligently and carelessly failed to stop the car while he was on said fender; that the motorman in charge of the car negligently and carelessly failed to stop his car after the child rolled off in front of the fender and before he was run over and killed; and that the motorman negligently failed to lower the fender and prevent the accident.

Defendant's answer admitted that the deceased, Leon Shapiro, attempted to cross one of defendant's street car tracks south of Paul street, and on Twentieth street, in the city of Omaha. He was passing in front of a car going north on the east track of said defendant's street railway, and, with reference to his doing so, defendant alleged that deceased's attempt to cross the track in front of said car was so sudden and quick that the motorman in charge of said car was unable, although he exercised the utmost diligence in that behalf, to stop the car before said Leon Shapiro stepped in front of the same. Defendant further answering plaintiff's petition, and especially with reference to the third paragraph thereof, admitted that, when said Leon Shapiro started to run across said tracks, the car was running at a moderate rate of speed, about eight or ten miles an hour, the said speed being not only moderate, but, as defendant alleged, the usual rate of speed said car was run at or near said place. Defendant expressly denied all allegations and statements contained in the petition, and further denied the statement in paragraph 3 except as above admitted to be true. Plaintiff's reply was a general denial of the allegations of the answer.

On the issues thus presented, the case was tried to a jury in the district court for Douglas county. Defendant had the verdict and judgment, and the plaintiff has appealed.

Appellant's first contention is that the evidence was not sufficient to support the verdict. The record discloses that on the 22d day of August, 1912, plaintiff's decedent, a boy about three years of age, was run over and killed by one of

defendant's street cars which was being operated on north Twentieth street. The accident occurred between Nicholas and Paul streets, at a point where defendant's track was nearly level. The car which ran over the boy was a north-bound car running at about eight or ten miles an hour. The testimony shows that, about 3 or 4 o'clock in the afternoon of the day of the accident, the decedent, with several other children, was playing on the street along the east curb of Twentieth street, and, when the approaching car was at considerable distance away, all the children, except the boy Leon, ran across the street from the east to the west curb; that Leon remained on the east side of the street somewhere between the curb and the street car tracks; that, as the car approached him, and when it was about a length and a half away from him, he suddenly started to cross the tracks and ran in front of the car, with the result that he was knocked down, run over, and killed. So far there was no conflict in the evidence. There is not much conflict in the testimony as to the point where the child started to cross the street, but the evidence is somewhat conflicting as to the distance the car ran after the child started to cross the track and the place where it was stopped. There was also some conflict in the evidence as to whether the motorman was negligent in failing to stop his car. This was not a direct conflict, for the motorman testified that, as soon as he saw the child was going to cross the track, he sounded the gong and made every possible effort to stop the car as quickly as possible. His evidence was corroborated by the testimony of others who saw the accident, and by a disinterested eye-witness, who testified that when the boy ran in front of the car it was within three feet of him, and was further corroborated by the testimony of experts in the management of street cars. One of plaintiff's witnesses who saw the accident testified that the stop made was as good as could have been made considering the speed at which the car was running. There was no direct evidence to the contrary, but certain witnesses for the plaintiff gave their opinion as to the distance in which a car could be stopped under the cir-

cumstances existing at the time of the accident. As we view the record, the evidence quite conclusively establishes the fact that the car, which was a short one operated by hand brakes, was stopped within from 15 to 25 feet after it struck the child. Appellant strenuously contends that the child was struck and fell upon the fender of the car, and it was claimed that the motorman was negligent in failing to lower the fender. On this point there was a direct conflict in the evidence. The preponderance seems to favor the defendant's contention that the child did not fall upon the fender, but was knocked down by the fender and immediately rolled under it. The motorman testified that he did not have time to drop the fender because he was exercising all his energy and making every effort he could to stop the car. With this conflict in the evidence, it cannot be said that it does not sustain the verdict.

Appellant's next assignment of error which requires consideration is that the trial court erred by copying the pleadings in his instructions. We have often had occasion to condemn this practice; but, in reading the instructions in the instant case, it appears that the court by instructions numbered 5 and 6 correctly and concisely submitted to the jury the particular allegations of negligence of which the plaintiff complained. In view of this fact, the judgment should not be reversed. Other instructions are assigned as error, but, without making particular reference to them, we are satisfied that the case was fairly tried and correctly submitted to the jury.

Finally, it is contended that, by failing to lower the fender of the car, the motorman was guilty of such negligence as entitles the plaintiff, as a matter of law, to a judgment. Where the motorman in operating a street car moved by electricity is confronted with a sudden emergency which requires him to attempt to stop his car or lower the fender, if in such emergency he exercises reasonable care and adopts well known and approved methods of stopping his car, instead of dropping the fender, he cannot be said to be guilty of negligence, as a matter of law, and this rule

should be applied where the evidence tends to show that he had insufficient time to lower the fender, and that, if it had been lowered, the injury could not have been prevented.

The evidence sustains the verdict, and the judgment of the district court is

• . AFFIRMED.