LAWRENCE ALLERTZ, APPELLEE, v. LOU HANKINS; LEE BURROUGHS, APPELLANT.

FILED FEBRUARY 16, 1918. No. 19781.

1. **Master and Servant: INJURY TO THIRD PERSON: LIABILITY OF MASTER: QUESTION FOR JURY.** In an action to hold a master liable for the act of a servant, if the act complained of is within the scope of the agent's employment, the master may be liable if the servant did the act with a view to the service for which he was employed. If, then, the question is whether the servant at the time had some purpose of his own and not connected with his employment in doing the act, it becomes a question of fact for the jury.

2. ————: ————: ————. If the employment of a foreman in a restaurant includes the maintaining of decent order among the waiters and employees generally, with authority to discharge an employee if necessary for that purpose, it does not follow that the scope of the employment includes corporal punishment or personal violence. The employer will not be liable for such action on the part of his employee in the absence of evidence that he has directed or authorized it.

3. **Pleading: AMENDMENT ON APPEAL.** A pleading may be amended before or after judgment, in furtherance of justice, "when the

amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." Rev. St. 1913, sec. 7712. If the evidence, without objection, clearly proved a "claim or defense," the pleading will, upon appeal, be considered amended accordingly.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE.. *Reversed.*

*John J. Ledwith,* for appellant.

*John B. Barnes, Clinton J. Campbell* and *Harry R. Ankeny, contra.*

SEDGWICK, J.

The defendant Burroughs was the proprietor of a restaurant in the city of Lincoln. The plaintiff and the defendant Hankins were in his employ in the restaurant. The plaintiff brought this action in the district court for Lancaster county against Hankins and Burroughs jointly to recover damages alleged to have been caused by an assault upon him by the defendant Hankins. He recovered a judgment against both of the defendants, and the defendant Burroughs has appealed.

The defendant Hankins contends that he acted in self-defense only, and that the plaintiff was responsible for his own injuries. As Hankins is not a party to this appeal, that question is not discussed in the briefs, and it is assumed for the purpose of this decision that Hankins assaulted the plaintiff, and that the evidence justifies the recovery against him.

The plaintiff insists that, although Burroughs was not at the time in the room where the assault occurred, he is liable for the acts of Hankins under the circumstances. Hankins was foreman for the defendant Burroughs, and, in Burroughs' absence, had charge of the business and control of the employees. He also acted as cook, and plaintiff was one of the waiters. The difficulty between Hankins and the plaintiff arose from the manner of the latter's service of some of the pa-

trons of the restaurant. It is alleged, and we assume the jury were justified by the evidence in finding, that Hankins rebuked the plaintiff for his manner of performing the service, and, in anger and without cause, threw some articles, which were for use in the business, at plaintiff, which caused the plaintiff's injuries. It is suggested in the brief that Burroughs anticipated such conduct on Hankins' part and encouraged it, but the evidence wholly fails to warrant such a suggestion. It is contended that after the trouble Burroughs took the view that the plaintiff was at fault, and attempted to protect Hankins from prosecution or trouble on account thereof, but this evidence has no tendency to show that anything that Burroughs did could have been considered to have been the cause of the assault. The questions principally discussed in the briefs are: First, whether the act of Hankins in making this assault was within the scope of his employment or so connected with his duties as to make his employer responsible for his acts; and, second, whether Burroughs knew that Hankins was quarrelsome and vicious to such an extent as to make him a dangerous man in his position as foreman, and so was guilty of negligence in continuing him in such employment, which was the proximate cause of the plaintiff's injury.

Upon the first question the plaintiff quotes from the note in *Goodloe v. Memphis & C. R. Co.,* 54 Am. St. Rep. 67, 89, (107 Ala. 233): "Whether a servant did a tortious act with a view to his master's service, or to serve a purpose of his own, is a question of fact for the jury." When the act complained of is within the scope of the agent's employment, the master may be liable if the servant did the act with a view to the service for which he was employed, although the master would not be liable if the servant at the time had some purpose of his own and not connected with his employment in doing the act, and when the question depends upon the purpose and intention of the servant,

it becomes a question of fact for the jury. And the statement quoted, under such circumstances, would be accurate. A more complete statement and one of more general application is found in the quotation from *Nelson Business College Co. v. Lloyd,* 71 Am. St. Rep. 729 (60 Ohio St. 448): "In an action seeking to hold the master liable for an act of his servant, which, from its nature, is within his employment, the question is whether it was in fact done in the performance of his service to his master, or was done wholly for the purpose of injuring the plaintiff, and none other, that question must be determined by the jury." And this quotation suggests the vital question in this case. Was the act of Hankins in assaulting this plaintiff "from its nature within his employment?" If the nature and quality of the act is clearly shown without dispute in the evidence, the court must so determine, and not submit that question to the jury. When Burroughs authorized Hankins to act as foreman in his business, he gave him such authority over the persons there employed as he himself would possess under the same circumstances. It is said that Hankins had authority to direct the action of the employees, to rebuke them for misconduct, and even to discharge them from the employment altogether. If the evidence would justify the finding of such authority reposed in Hankins, it would not follow that he was authorized to commit violent assaults upon the employees, or that he was employed with a view to any such conduct on his part. In some cases, as in the employment of a street car conductor, the scope of the employment necessarily includes the proper use of force under some circumstances. If a drunken rowdy so conducts himself as to become dangerous to the passengers, it may become necessary to remove him from the car, and in such case to use necessary and proper force for that purpose is within the scope of the conductor's employment, so that his employer would be

liable for a misuse of force or for unnecessary violence. There is some evidence that this foreman was expected to maintain decent order in the restaurant, and that he might even discharge an employee if necessary for that purpose. But there is no evidence in this record that would justify the finding that to use corporal punishment, or personal violence, was within the scope of his employment. Indeed, the proprietor himself had no such function, and could not delegate such powers.

There is some evidence that upon a former occasion Hankins and another employee had had difficulty which possibly resulted in blows, and that Hankins was still retained in the employment, but this fact of itself is not sufficient to establish contemplating any such action on the part of Hankins, or any reason to suppose that it would be repeated.

There is evidence from which perhaps it might be inferred that Hankins was a quarrelsome man, so much so that it might possibly be considered dangerous to place him in such a position. If the evidence shows that Burroughs was aware of this fact, it is much more clearly proved that this plaintiff was also aware of Hankins' disposition and practices.

The plaintiff contends that Burroughs is not now in a position to avail himself of the defense of assumption of risk on the part of plaintiff, because that defense was not pleaded in his answer. The statute (Rev. St. 1913, sec. 7712) provides: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, * * * when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." It has been the settled practice in this state that, "where the ends of justice seem to demand it, leave will be given in the supreme court to amend a petition so as to fully state the cause of

action." *Humphries v. Spafford,* 14 Neb. 488. The statute quoted expressly applies "when the amendment does not change substantially the claim or defense," and the same rule must necessarily be applied to both "claim or defense."

The plaintiff's own evidence shows that he was familiar with the character and conduct of Hankins, and still continued in the employment without making any objection or complaint to the defendant Burroughs. He cannot, therefore, avail himself of this supposed negligence on the part of Burroughs.

The plaintiff has entirely failed to prove his cause of action against the defendant Burroughs, and the judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON and ROSE, JJ., not sitting.

HAMER, J., dissenting.

In the majority opinion it is said: "It is assumed for the purpose of this decision that Hankins assaulted the plaintiff, and that the evidence justifies the recovery against him." It is further said: "It is alleged, and we assume the jury were justified by the evidence in finding, that Hankins rebuked the plaintiff for his manner of performing the service, and, in anger and without cause, threw some articles, which were for use in the business, at plaintiff, which caused the plaintiff's injuries." The majority opinion takes the view that the evidence fails to warrant the suggestion in plaintiff's brief that Burroughs anticipated Hankin's conduct.

Whether the act of Hankins was within the scope of his employment is an important question to be ascertained from the evidence. It is also important whether Burroughs knew that Hankins was quarrelsome and accustomed to treat men with violence who were under his direction in the restaurant. These questions were for the jury and, as I think, from an examination

of the evidence, were probably rightly determined. The jury found for the plaintiff.

Let us first examine the evidence and see whether Hankins had the support of his employer, Burroughs, in the supervision which he attempted to exercise and in the discipline he undertook to administer. Hankins appears to have slapped a man named Bradley, and to have thrown him under the stairway. Bradley seems to have been a very small man. Burroughs seems to have known about it, because Bradley came out into the dining-room with his head bleeding. Burroughs appears to have been in the house at that time. John Downing was an old man and a helper. Hankins "got hold of him, jerked his apron off; he threw him out of the door and threw his apron after him." The witness thinks that Burroughs was around the restaurant at that time. The witness seems to have thought that Hankins was violent. "I seen him slam things around there. One instance, I seen him, an old gentleman there by the name of Colonel that was working. He slammed his knife down on the platform, and scared the old man, and he jumped over against a barrel." The old man claimed that he ruptured himself, and the witness saw him after that when "he was bandaged up." The witness recites that "the old Coloonel was washing dishes there and did not hear very well. Lou hollered over after him for some dishes or something, and the old man did not seem to pay any attention to him, and he (Hankins) threw the ribs that was cut off the rest of the piece at the old gentleman, and it went through the window open right above his head where, if he had straightened up, he would have been hit." The witness says that Burroughs had to put the window in, and that "he knew that Lou broke it; that is all." The witness testified that he had heard these assaults discussed in Burroughs' hearing; "it would be amongst ourselves, in hearing distance." It does not appear that Burroughs found

fault with Hankins for making these assaults. He seems to have been violent in his conduct. The witness saw him "kick the meat block out of the house." Then he picked up the beef steak "and threw it on the range." Hankins assaulted W. A. Heskett. Heskett testified that he had a conversation with Burroughs immediately after the assault. Heskett asked him if he (Haskett) should work. "He says, 'You stay here until I come up,' and he went down stairs, and when he came up I went back in the kitchen, and he says, 'I want you fellows to forget about this.'" It appears that Heskett wanted to know who should pay for the dishes that were broken when Hankins and Heskett had an affray. The plaintiff offered to show that Hankins paid for all the dishes that were broken that time amounting in value to $5. There was an objection which was sustained. The money appears to have been paid to the defendant Burroughs. If admitted, this would have shown that Burroughs knew something of Hankin's disciplinary tendencies.

Burroughs testified: "Why, he (Hankins) was in charge of my kitchen, in charge of everybody that was in that kitchen any time and all the time." "Q. Now, this man Hankins, according to your system there, had charge of every one connected with that kitchen? A. Yes, sir." The altercation between Hankins and Allertz arose over the bringing out of an order for spinach. Burroughs seems to have wanted Allertz to bring out the spinach. "Q. And Hankins wanted it brought out? A. We both wanted it brought out. Q. And it was over the bringing out of that order that the altercation arose between Allertz and Hankins? A. Yes, sir." Burroughs seems to have paid a hospital bill of $1.50 at St. Elizabeth Hospital. He also seems to have paid $4 for a hack to convey his wife. That these violent exhibitions of temper could have gone on without Burroughs knowing it seems unreasonable. I think the evidence clearly shows that Burroughs

knew that Hankins was violent, and Hankins appears to have justified the conclusion of the jury. I am not quite sure that the evidence warrants the conclusion that Burroughs anticipated that Hankins would administer the chastisement which he did administer to the plaintiff. Of course, he could not justify the defendant Hankins in throwing a bowl at the plaintiff and breaking his skull or otherwise injuring him. Hankins was probably very efficient, and appears to have entertained strong ideas touching his right to administer chastisement to the waiters by the exercise of personal violence. The evidence appears to show that he had on several former occasions asserted his physical superiority on behalf of his employer.

In the majority opinion there is no effort to justify the conduct of Hankins, and it is contended, apparently, that because the plaintiff knew Hankins' violent character therefore he assumed the risk. It is said in the opinion: "The plaintiff's own evidence shows that he was familiar with the character and conduct of Hankins, and still continued in the employment without making any objection or complaint to the defendant Burroughs. He cannot, therefore, avail himself of this supposed negligence on the part of Burroughs." Whatever this may mean, it is not sufficient justification of the conduct of Burroughs in keeping this sort of a man in his employ. He ought not to be allowed to do so without paying the damage which the plaintiff sustained.

"Where, in an action at law, the evidence is conflicting, it is not the province of this court to examine it further than to see that there is sufficient evidence to justify the conclusion reached." *Young v. Kinney,* 85 Neb. 131. That the judgment should not be set aside, see City of *Omaha v. Houlihan,* 72 Neb. 326; *Shirley v. City of Minden,* 84 Neb. 544; *Tillson v. Holloway,* 94 Neb. 635; *First Nat. Bank. v. Hedgecock,* 87 Neb. 220; *Roden v. Williams,* 100 Neb. 46; *Dohner v.*

*Barr,* 100 Neb. 172; *Mundy v. Meyer,* 100 Neb. 296; *Shapiro v. Omaha & C. B. Street R. Co.,* 100 Neb. 452; *Holmvig v. Dakota County,* 90 Neb. 576; *Smith v. Chicago, St. P., M. & O. R. Co.,* 99 Neb. 719.

The district judge seems to have carefully and fairly submitted the case to the jury upon a conflict of testimony, and it seems that the verdict ought not to be disturbed, and that the judgment of the district court should be affirmed.