ROBERT G. KLAUSE, APPELLANT, v. NEBRASKA STATE BOARD OF AGRICULTURE, A CORPORATION, ET AL., APPELLEES.
35 N. W. 2d 104

Filed December 3, 1948. No. 32459.

William L. Walker, Leonard Dunker, and Earl Ludlam, for appellant.

Max Kier and Joseph H. McGroarty, for appellees.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an action for damages by Robert G. Klause, plaintiff, appellant here, against Nebraska State Board of Agriculture, a corporation, Joseph Dusek, William Kuusisto, Adam Krieger, and Max Clayton, defendants, appellees here. Elmer Snodgrass and Charles Moon

were named defendants in the petition filed in the district court but they are not parties to this appeal.

The case was tried to a jury. At the conclusion of the evidence the defendants separately moved for dismissal of the action on the ground that no cause of action had been proved against them. The motion of the defendant Clayton was sustained. The other motions were overruled whereupon under instructions of the court the case was submitted to the jury for determination. On November 17, 1947, the jury returned a verdict against the plaintiff and in favor of all defendants whose motions for dismissal were overruled.

On November 19, 1947, plaintiff filed a motion for new trial as to all defendants except Max Clayton.

On November 26, 1947, plaintiff filed a motion for judgment notwithstanding the verdict, or for a new trial. The defendant Clayton was not mentioned in this motion.

On January 10, 1948, plaintiff filed an amendment to his motion for judgment notwithstanding the verdict or for new trial. No new matter is included in this amendment except an allegation that the court erred in directing a verdict in favor of the defendant Clayton. This amendment was not predicated on newly discovered evidence.

The various motions were overruled by the court. From the judgment in favor of defendants and the order overruling the various motions the plaintiff has appealed.

The assignments of error set out in the brief are substantially (1) that the verdict is against the clear weight of the evidence, (2) that the court erred in instruction No. 21 in submitting to the jury the question of contributory negligence on the part of plaintiff, (3) that the court erred in instruction No. 21 in submitting the question of comparative negligence, (4) that the court erred in instructing the jury in instruction No. 18 that the Fair Board (Nebraska State Board of Agriculture) and Adam Krieger could not be held liable for acts of

defendants Dusek and Kuusisto while wrestling outside the ring, (5) that the court erred in instruction No. 15 * in telling the jury that the Fair Board (Nebraska State Board of Agriculture) and Adam Krieger were not insurers and for failure to define their duty to plaintiff, (6) that the court erred in instructing in instruction No. 14 that the defendant Dusek in assaulting plaintiff outside the ring was without the scope of his employment, (7) that the court erred in submitting in instructions Nos. 16 and 17 the issue of assumption of risk, and (8) that the court erred in directing a verdict in favor of Max Clayton.

The factual situation upon which the determination herein depends is substantially the following: On and prior to January 28, 1943, the Nebraska State Board of Agriculture, also known as the Fair Board, had a license to conduct wrestling matches in the 4-H building at the Nebraska State Fair Grounds at Lincoln, Nebraska. Adam Krieger was matchmaker for the Fair Board. Events were open to the public on tickets of admission. In the building is a square wrestling stand, or ring as it is commonly called. The platform is elevated about four feet above the ground. At the four corners of the platform are metal posts or uprights. Secured to these posts and surrounding the ring are ropes or cables. The purpose of the ropes or cables is to define the ring and to contain or confine therein the contestants. Outside and surrounding the platform and probably starting four to six feet away and extending backward are arranged seats for spectators.

On January 28, 1943, a card of wrestling events was being conducted at this place by the Fair Board. Adam Krieger was the promoter and matchmaker and was in active charge. The defendants Dusek and Kuusisto were the participants in one of the events. The defendant Dusek had been booked or procured through the defendant Max Clayton. Plaintiff was a spectator occupying

a front seat on the west side of the ring. One Elmer Snodgrass was referee for the event.

During the event the referee was outside the ring and in some manner came into contact with plaintiff who was sitting in his seat. The cause of the contact is in dispute. In consequence plaintiff's nose was broken. For the injury sustained and the consequential damages plaintiff contends that the defendants and each of them are liable.

The evidence on the part of plaintiff as to the manner in which he was injured is that Dusek threw or pushed the referee outside the ring and down onto the ground, then threw Kuusisto out, then got out himself, and started wrestling with Kuusisto outside the ring whereupon the referee attempted to separate them and in the melee was thrown back into the plaintiff.

There is some difference in the evidence of defendants as to what happened but in no important particular insofar as the issues involved are concerned. Their witnesses were in accord that the referee came into contact with plaintiff and the defendants do not contend that plaintiff was not injured as claimed by the contact. Certain of those who testified in relation to the subject said that the occurrence came about substantially as follows: The contestants were in the ring with Dusek standing against the ropes on the west side and Kuusisto on the east side. The referee was out of the ring on the west side. He was returning to the ring directly back of Dusek. Kuusisto made a flying tackle or leap toward Dusek. Dusek sidestepped and Kuusisto missed him and struck the referee and knocked him backward into the lap of plaintiff. Certain other witnesses for the defendants say and indicate that the contestants were out of the ring previously but their testimony does not connect that fact with the incident resulting in the injury to plaintiff. Factually therefore according to the evidence of plaintiff the activation which resulted in his injury was participated in by the two contestants

and the referee whereas according to the evidence of defendants it was activated solely by the defendant Kuusisto.

The defendants in the answers on which the case was submitted to the jury set up as defenses that the plaintiff assumed the risk of such dangers as caused the injury which he sustained by placing himself in the seat which he occupied and that therefore he was not entitled to recover, also that in the choice of his seat he was guilty of negligence which proximately caused or contributed to his injury sufficient to defeat a recovery.

The district court instructed on both assumed risk and contributory negligence and as pointed out by the assignments plaintiff urges this as error.

The defendants assert that these assignments are not available to plaintiff since they were not properly assigned as error in the motion for new trial. They assert, and it is a fact, that the instructions of the court with reference to contributory negligence and assumed risk are contained within certain instructions from 1 to 24 inclusive. They assert also, and this is likewise a fact, that the motion for new trial fails to attack the instructions 1 to 24 or any of them separately and independently but only as a whole and in the entirety. They therefore contend that these assignments may not be considered here since it is a rule of this court that an assignment of error in a motion for a new trial to the effect that the trial court erred in giving a group of instructions does not require a consideration of such assignment further than to ascertain that one of the instructions was properly given. Anderson v. Nebraska Defense Corporation, 146 Neb. 466, 20 N. W. 2d 322; In re Estate of Woodward, 147 Neb. 270, 23 N. W. 2d 75.

This is a long established rule. We however have come to the conclusion that if the rule ever had a reasonable basis the reason for it has disappeared, and accordingly when any such motion for new trial is filed the party filing such motion shall be deemed to have

assigned error separately as to each instruction contained within the specified group.

In the absence of a legal requirement that the specific ground of objection to an instruction or instructions shall be contained in a motion for new trial, and in view of the knowledge gained from an examination of the reported cases on this subject that the intention was in each instance to except separately to each instruction included, it appears that this is but a technical rule which ought no longer to be permitted to entrap the unwary and to hazard substantial rights of litigants who bring their causes to this court for review.

As already indicated plaintiff contends that there was no evidence upon which to base a finding that he was guilty of contributory negligence therefore it was error for the court to instruct the jury on this subject.

It is well settled that where there is no evidence upon which to base a finding of contributory negligence on the part of a plaintiff in an action by him for damages it is error for the court to instruct the jury on that subject. Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19; Andersen v. Omaha & C. B. St. Ry. Co., 116 Neb. 487, 218 N. W. 135; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439; Hartford Fire Ins. Co. v. County of Red Willow, 149 Neb. 10, 30 N. W. 2d 51.

On examination of the record in this case we have failed to find any evidence that would directly or by reasonable inference indicate contributory negligence on the part of plaintiff. All that he did was to sit in the seat to which his ticket entitled him. The seat was placed there under the authority of the Fair Board. He did not move from his place until after he received his injury. There is nothing to indicate that he was in a place known to him to be dangerous or that he was warned of the danger to which he was subjected in time to avoid its consequences.

The defendants suggest that plaintiff was familiar with wrestling matches and the manner in which they

were conducted and that he knew that incidents such as this were likely to occur, therefore he was guilty of contributory negligence in occupying the seat assigned to and occupied by him, also that he was guilty of contributory negligence in not removing himself, on his theory of the evidence, when the contestants and the referee were out of the ring.

To sustain their theory reliance is largely placed upon Tite v. Omaha Coliseum Corporation, 144 Neb. 22, 12· N. W. 2d 90, 149 A. L. R. 1164, and the cases cited and commented on therein. That case was one wherein a spectator, occupying an unprotected ringside seat at an ice hockey game, was struck by a flying puck and was seeking damages for injuries on account of being hit by the puck.

In that case after reviewing the cases involving injuries to spectators at baseball games and ice hockey games this court came to the conclusion that it was proper for a jury to consider and determine whether or not, in the light of her conduct and knowledge of the incidents of the game of ice hockey, the plaintiff in that case was guilty of contributory negligence. In arriving at that conclusion, it was said: "A spectator at a game of hockey must exercise due care in protecting himself against known dangers or such dangers as should be known and appreciated by a reasonable person in the exercise of due care."

The defendants contend that this rule is applicable in the present instance. An examination of the opinion and its theory and the supporting opinions discloses that the contention of defendants is not tenable.

The theory of these opinions is that in such an action contributory negligence is not necessarily involved in being seated in a seat provided for the spectator but that it may or may not be, depending upon the person's familiarity with the characteristics of the game and depending further upon whether or not in the light of the familiarity shown such person exercised due care to anticipate and

avoid being struck by a flying puck, a flying puck being a characteristic of the game of ice hockey.

There is nothing to indicate that flying tackles by participants the effect of which is to knock referees into the laps of spectators is a characteristic of wrestling, or if it is that under the circumstances of this case it could have been avoided in the exercise of due care by plaintiff. While it is shown that participants and referee often get out of the ring yet it is not shown that a known characteristic of such a departure from the regular wrestling precincts is the knocking of the referee into the laps of spectators.

In the absence of such a known characteristic or characteristics it cannot well be said that plaintiff was lacking in care in failing to anticipate and to guard against being struck as it has been shown that he was struck. He could not have been guilty of contributory negligence and the trial court committed reversible error in instructing on that subject.

Plaintiff assigns as error the giving of instructions on the defense of assumed risk. Our conclusions with regard to this assignment are the same as with regard to the defense of contributory negligence.

As pointed out in Tite v. Omaha Coliseum Corporation, *supra,* the plaintiff as a spectator assumed the risk of such dangers only as were incident to a wrestling match of which he had knowledge or which should have been obvious and apparent to him as a reasonable person under the circumstances in the light of his information and knowledge. On the facts adverted to herein and from the entire record we have failed to find anything to justify a conclusion that the plaintiff was derelict in any duty owed to himself which was imposed or implied by the definition of his rights and liabilities within the meaning of the doctrine of assumed risk.

We think that the contention that instruction No. 14 was erroneous has merit. In that instruction the jury was told that, if it found that while the two wrestlers

were on the ground outside the ring they continued to wrestle and while so doing the referee attempted to separate them and the defendant Dusek assaulted plaintiff by shoving the referee into him thus causing his injuries, there was no liability against anyone except Dusek, since any such act on the part of Dusek was outside the scope of his employment.

Even if it be assumed that Dusek was an employee of the other defendants or some of them the authorities cited to sustain the instruction fail to do so. The authorities were not sufficient to permit or require the court, as a matter of law on the facts, to inform the jury that in this respect the acts of Dusek were outside the scope of his employment.

The defendants rely, among other cases, upon Allertz v. Hankins, 102 Neb. 202, 166 N. W. 608, L. R. A. 1918F 534. In that case it was said: "In an action to hold a master liable for the act of a servant, if the act complained of is within the scope of the agent's employment, the master may be liable if the servant did the act with a view to the service for which he was employed. If, then, the question is whether the servant at the time had some purpose of his own and not connected with his employment in doing the act, it becomes a question of fact for the jury." See, also, Zaitz v. Drake-Williams-Mount Co., 107 Neb. 262, 185 N. W. 424.

Again assuming that this was a master and servant relationship it cannot well be said as a matter of law on the record presented that at the time and under the circumstances Dusek was engaged upon a purpose of his own not connected with his employment. Certainly if this question was issuable in this case there was sufficient evidence to justify a reasonable inference that Dusek was not at the time engaged upon some purpose of his own but upon acts incidental to his employment. This being true the question was one for a jury and the court erred in withdrawing it by the instruction complained of.

The theory as to how and why any doctrine of master and servant is applicable to this situation has not been pointed out and we have on our own account found no reasonably applicable theory.' Dusek and Kuusisto were in no true sense according to any evidence adduced employees of a master but were by reasonable inferences in the status of persons engaged by contract to stage athletic or sporting events. It became the duty of the court to thus instruct and to refrain from instructing in anywise under the master and servant doctrine.

The only other complaints in the assignments of error that the court did not properly instruct as to those engaged in the staging of an athletic event are those contained in the exceptions to instructions Nos. 15 and 18.

Plaintiff urges that the court failed in instruction No. 15 to define the duty that the defendants Adam Krieger and the Fair Board owed to the plaintiff. The contention is without merit. It is true that this duty was not defined in the particular instruction but it was defined fully and properly in instruction No. 6 and in substance as requested by plaintiff in No. 1 of his tendered instructions.

The giving of instruction No. 18 was erroneous for the same reason as the giving of instruction No. 14. The main difference between the two is that No. 14 has a limited application whereas No. 18 applies the master and servant doctrine to additional parties.

Since there was no evidence to support a charge of contributory negligence on the part of plaintiff or one that he assumed the risk of the position in which he found himself and none upon which to justify in any disclosed situation the submission of any instruction under the master and servant doctrine, the trial court should have limited its instructions to the principles embodied in the following from Welsh v. Jefferson County Agricultural Society, 121 Neb. 166, 236 N. W. 331: "One who operates a place of public amusement or entertainment is held to a stricter accountability for injuries

to patrons than owners of private premises generally; he is not the insurer of the safety of patrons, but owes to them only what, under the particular circumstances, amounts to ordinary and reasonable care." See, also, Emery v. Midwest Amusement & Realty Co., 125 Neb. 54, 248 N. W. 804; Tite v. Omaha Coliseum Corporation, *supra;* Annotation, 149 A. L. R., p. 1174; 52 Am. Jur., Theaters, Shows, Exhibitions, Etc., § 62 et seq., p. 306.

Plaintiff charges that the action was erroneously dismissed at the conclusion of the evidence as to the defendant Max Clayton. This assignment is without merit. There is no word of evidence connecting him with the promotion or conduct of the events of the day in question. The services of Dusek were contracted for through him. Dusek was in nowise in his employ or under his control.

In any event the motion for new trial as to him came too late. The motion was not filed until January 10, 1948. The effective statute required that the motion be filed within ten days after November 17, 1947. § 25-1143, R. S. Supp., 1947.

The remaining assignments of error are without substantial merit, therefore they will not be discussed.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.