STATE OF NEBRASKA, APPELLEE, v. JACK MILLER, APPELLANT.

121 N. W. 2d 39

Filed April 12, 1963. No. 35370.

Beatty, Clarke, Murphy, Morgan, Pederson & Piccolo and Neighbors, Danielson & Van Steenberg, for appellant.

Clarence A. H. Meyer, Attorney General, and Cecil S. Brubaker, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

Appellant Jack Miller, hereinafter referred to as defendant, was charged with the crime of assault with intent to commit rape. He was convicted and sentenced to confinement in the Nebraska State Reformatory for a period of 5 to 6 years at hard labor. Defendant's motion for a new trial was overruled. He brings the cause to this court by appeal to have the conviction and sentence set aside.

Defendant first contends that the trial court erred in overruling his motion for a new trial because there was insufficient evidence to support the verdict.

Terry Gonzales, who will be referred to herein as the prosecutrix, was a student at a beauty academy. She lived alone in an apartment in the city of Scottsbluff, in Scotts Bluff County, Nebraska.

The testimony of the prosecutrix may be summarized as follows:

About 4 weeks previously she met the defendant at the apartment of Lois Lilly and Marge Buck, who attended the same academy. Defendant was then asleep on a couch in that apartment. He was also present there on several other mornings. She had never been out with him and he had never been in her apartment. On March 27, 1962, the prosecutrix had gone to bed in her apartment early in the evening wearing a slip, pants, and a robe. At about 11:20, the defendant knocked at her

door. Thinking it might be a visit from her parents or the girls, Lois and Marge, and believing the screen was hooked, she got up half asleep and opened the door. Instead the defendant was there. He forced his way inside and pushed her against the bed which was in front of her door. He carried a can of beer which he tried to force her to drink. She refused and he tried to kiss her. She attempted to push him away. He became angry and pushed her down on the couch and was on top of her. He tried to take off her pants, clawed at her clothes, and tried to feel her sex organs. Defendant said he had always thought about doing this and repeatedly told her to be nice to him. He tore her slip but she succeeded in forcing him off of her and ran into a closet as he was between her and the door. While she was in the closet he took out an open pocketknife and placed it against her stomach and said he was going to kill her. While they were at the closet he tried to tear her slip off and feel of her breast. He told her to take off her clothes and be nice to him; that he would kill her if she didn't take her clothes off. Prosecutrix finally persuaded defendant to allow her to lock the door. She escaped as she went to the door and fled the apartment. She ran a block and a quarter to the home of Reverend Ward and Leone Conklin, rang the doorbell several times, and succeeded in gaining admittance. The defendant ran after her but was caught by a clothesline.

Leone Conklin testified that the bell rang several times and the dog was barking. When she got the door open the prosecutrix appeared to be going down the steps as if she thought it wasn't going to be opened. Prosecutrix then ran into the house barefooted and dressed in her nightclothes. She rushed to sit down and appeared frightened and breathless. She said a man was after her and she had fled. Her feet were sore from running in the rough alley. She said she was all right but the man had a knife and it frightened her. She had fallen over a fence or the doghouse in the Conklins'

yard, hurt her leg, cut a toe, and tore her slip again. Mrs. Conklin at her request called the police.

Reverend Conklin came later. Prosecutrix was seated upon the davenport when he came in and appeared frightened. She told him a man had entered her apartment and made advances toward her. Her legs were injured beneath the knees and they applied a band-aid.

A police officer testified they found the defendant about 1:30 a.m., on March 28, 1962, sleeping in a car at the Junior High School parking lot. He was searched and a pocketknife was taken from his person which was later identified by the prosecutrix as the one he had threatened her with. Defendant had scratch marks and a bruised area under his chin. His photograph, showing the chin area and a long mark on the throat under it, was introduced in evidence. He said he got it from walking into a wire, but denied it was done while chasing a girl.

Defendant testified he went to the apartment of the prosecutrix that night by invitation and was admitted by her. He said he had gone to her apartment to have sexual intercourse with her. He denied any attempt at forcing her to drink beer, drawing a knife, tearing her clothes, or threatening her in any way. He started kissing her and she asked for beer. Because she was only 18, he at first refused to get any for her but after repeated entreaties he started to get some which he had in the car. She slammed the door when he went outside. In going to the car he ran into the clothesline which flipped him. He then crawled into the car and drove around for a time before going to the school parking lot to wait for a friend.

"This court, in a criminal action, will not interfere with a verdict of guilty, based on conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Reizenstein v. State, 165 Neb. 865, 87 N. W. 2d 560. The evi-

dence is sufficient to support the verdict and there was no basis for the assignment of error.

The next assignment of error is that the court erred in not instructing that consent or failure to resist when opportunity appears was an absolute defense as to the crime charged. The court's instruction No. 8 reads as follows: "Rape is defined to be the unlawful carnal knowledge by a man of a woman or a female child, forcibly and against her will." Instruction No. 14 given by the court is as follows: "To warrant a conviction for an assault with intent to commit a rape, the evidence must show, beyond a reasonable doubt, that the accused not only intended to have sexual intercourse with the prosecutrix, but that he intended to use whatever force might be necessary to overcome her resistance and accomplish his object." These instructions clearly state that the acts of the defendant must be against the will of the prosecutrix. They likewise state that the defendant must have intended to overcome her resistance and accomplish his object. It is true that the instructions are brief and do not elaborate or emphasize the extent of the resistance required by the victim of those lustful designs. The defendant contends that under the holding of this court in Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, more extensive instructions on the subject of consent and the resistance of the prosecutrix should have been given. Doubtless the court would have given further instructions if they had been tendered by the defendant. No such instructions were tendered and this court cannot say the instructions given were erroneous or prejudicial in the absence of others requested by the defendant. "Where the trial court has instructed generally as to the issues of a criminal prosecution, error cannot be predicated on its failure to instruct as to a particular phase of the case, where no proper instruction has been requested by the party complaining." Welton v. State, 171 Neb. 643, 107 N. W. 2d 394. The asserted error cannot be sustained.

The defendant next urges as error the failure of the court to instruct the jury that corroboration of the prosecutrix was necessary before a conviction could be had. The only mention of corroboration is in instruction No. 13, hereinafter separately discussed. In Frank v. State, *supra,* this court said: "It will be noted that in the prosecution of cases wherein assault with intent to commit rape is pleaded, sections 28-408 and 28-409, R. S. 1943, must be considered as in pari materia. Davis v. State, 31 Neb. 247, 47 N. W. 854; Hall v. State, 40 Neb. 320, 58 N. W. 929; Liebscher v. State, 69 Neb. 395, 95 N. W. 870, 5 Ann. Cas. 351."

In Hanks v. State, 88 Neb. 464, 129 N. W. 1011, this court has held: " 'The failure of the court to instruct the jury, that a defendant charged with rape cannot be convicted without evidence corroborating the prosecutrix, is not error, unless it appears that such an instruction was requested.' Edwards v. State, 69 Neb. 386." The same rule applies to prosecutions for assault with intent to commit rape. Welton v. State, *supra.*

The defendant specifically assigns as error the giving by the trial court of instructions Nos. 9 and 13. The State asserts the assignment of errors in regard to these instructions need not be considered because in defendant's motion for new trial the error concerning these instructions was urged collectively with other instructions, some of which were patently correct. The State bases its argument on a rule at one time followed by this court but since expressly abrogated. Klause v. Nebraska State Board of Agriculture, 150 Neb. 466, 35 N. W. 2d 104. The instructions will be considered by us.

The first paragraph of instruction No. 9 which defendant alleges was erroneously given by the trial court and which is the only portion thereof pertinent to the question before us, reads as follows: "You are instructed that the intent to commit rape is a necessary element of the crime charged against the defendant. Intent is a mental process, and as such generally remains hidden

within the mind where it is conceived. It is rarely, if ever, susceptible of proof by direct evidence, but may be inferred from outward manifestation, by the acts of a person, and all the facts and circumstances in evidence *whether or not the defendant committed the acts complained of, and whether at such time he had such criminal intent."* (Italics ours.)

There is no complaint as to the first two sentences of the quoted portion of the instruction. It is contended however that the last sentence is confusing and as such is erroneous. Defendant asserts that the word "it" at the beginning of this last sentence refers to "intent," as did the previous two sentences. Claim is made that this sentence is a consolidation of two sentences in some standard instruction which it is asserted reads as follows: "It is rarely, if ever, susceptible of proof by direct evidence, but may be inferred from outward manifestation, *by the words* and acts of a person, and all the facts and circumstances. *It is for you to determine from all the facts and circumstances* in evidence whether or not the defendant committed the acts complained of, and whether at such time he had such criminal intent." (Italics ours.) The words in italics are those contended to have been omitted in instruction No. 9.

If the two sentences set out are used the meaning is of course clear. The question however now before us is the meaning of the last sentence as used in the trial court's instruction. Defendant contends that the sentence as given permits the jury to infer criminal intent, whether the defendant committed the acts complained of or whether he did not commit them and whether at such time he had such criminal intent. It is unnecessary for us to determine the exact meaning thereof. Indeed it is difficult to do so. It is however apparent, after careful study of the sentence from the instruction, that it is unintelligible and confusing. Criminal intent is not defined elsewhere in the instruction. Such intent is a vital part of the crime charged. An instruction is errone-

ous and should not be given where it is apt to confuse or mislead the jury. See 23A C. J. S., Criminal Law, § 1306, p. 742. In Hoffman v. State, 160 Neb. 375, 70 N. W. 2d 314, this court said: "If it does not appear from the record that an incorrect instruction to the jury did not affect the result of a trial of a criminal case unfavorably to the defendant the giving of the instruction must be considered prejudicial error." Because of error in the instruction given the judgment must be reversed.

Instruction No. 13 which defendant claims was erroneous is as follows: "You are instructed that testimony of an alleged complaint by the witness Terry Conzales (sic) to Leone Conklin and Ward Conklin may be considered by you only as corroborative of her testimony as to an asault having taken place, and may not be considered by you as corroborative of her testimony as to the assailant or as to the identify (sic) of such assailant." Defendant argues that in giving this instruction the court infringed on the right of the jury to pass on the credibility and weight of the evidence. He contends this instruction in effect tells the jury that the testimony of Leone Conklin and Ward Conklin is sufficient corroboration of the claim of the prosecutrix that an assault had taken place. According to the defendant the trial court should have instructed that this testimony might be considered by the jury in determining "whether or not" it amounted to such corroboration. The instruction says such testimony "may" be considered by the jury. It speaks of an "alleged complaint." The language appears permissive only, and not mandatory. We think the instruction was not objectionable as usurping the function of the jury. As hitherto previously pointed out the defendant could have requested further instruction on corroboration. In the absence of such an instruction the assignment of error is without merit.

Defendant assigns as error the trial court's admitting over objection the testimony of a doctor that he had examined the prosecutrix and that in his opinion she had

never had sexual intercourse. Defendant cites certain cases from other jurisdictions purporting to hold that though the unchastity of the prosecutrix may be gone into in a prosecution of this nature, the converse is not true; that her good character cannot ordinarily be shown until it has been attacked. We do not deem it necessary to decide this question in view of the evidence as reflected by the record in this case.

A witness Marjorie Buck testifying for the defendant said that the prosecutrix had told her she spent the night of March 16, 1962, with the defendant. Lois Siewert, also a witness for the defendant, volunteered the statement that the defendant was "supposed" to have stayed all night with Terry on that night, and stated the prosecutrix told her the next day that Jack had stayed with her all night. Defendant testified he went to the apartment of the prosecutrix on the night mentioned and he "had stayed with her." He later, in response to a question as to whether or not he had had sexual intercourse with her, refused to answer because it might incriminate him.

We think this was an attack on her character tending to show she was not chaste and that the rebuttal evidence was admissible under the circumstances. The assignment of error is not sustained.

The sentence imposed on the defendant was to serve from 5 to 6 years imprisonment in the Nebraska State Reformatory. The sentence is alleged by defendant to be excessive and also erroneous because it is an indeterminate one under section 29-2620, R. R. S. 1943, and that such sentences are not permitted with respect to a crime of violence. That an indeterminate sentence in this case was improper because of this statute is conceded by the State. Inasmuch as the case must be retried because of the erroneous instruction, the question of excessiveness of the sentence need not be discussed.

For the reasons set out in this opinion, the judgment

is reversed and the cause remanded with directions to proceed in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.